IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Action No. 3:11CR261–HEH |
| | ) |
| DANA JACKSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(Defendant's Motion to Suppress Evidence)

This case evolves from the seizure of drugs and two firearms during the execution of a search warrant from the purported residence of the defendant. As a result, defendant Dana Jackson was indicted on one count of possession with the intent to distribute cocaine base and cocaine hydrochloride and one count of possession of a firearm. It is presently before the Court on the defendant's Motion to Suppress Evidence. The defendant's challenge focuses on the legality of the search of a trashcan behind his alleged residence, which provided the basis for the search warrant. The defendant contends that because he had a reasonable expectation of privacy in the trashcan, the seizure of its contents by law enforcement officers violated his rights under the Fourth Amendment, and in turn, invalidated the affidavit supporting the search warrant. Both the defendant and the United States have filed detailed memoranda supporting their respective positions. The Court received evidence and heard oral argument on February 14, 2012. Because the issues for resolution are fact dependent, a detailed recital of the evidence is necessary.

I.

On May 31, 2011, Richmond City Police Officers Michael Verbena ("Verbena") and Bill Fitzpatrick ("Fitzpatrick") conducted a search of the residence located at 2024 Anniston Road in Richmond, Virginia, leased by the defendant's then girlfriend, Sierra Cox ("Cox").[1] The Officers conducted the search pursuant to a state search warrant signed by a Richmond Circuit Court Judge on May 26, 2011. The material facts constituting probable cause for the search warrant were obtained from a search of the trashcan located at the rear of the residence.

As part of an investigation, Officer Verbena received information from confidential informants that the defendant was dealing drugs from the back of 2024 Anniston Street, where he often resided. Officers Verbena and Fitzpatrick attempted to corroborate the tip by looking for evidence of narcotics activity in the trash bags located in a trashcan behind the residence. At the suppression hearing, Verbena testified that he and Fitzpatrick conducted the trash pull on Thursday, May 26, 2011, at four o'clock in the morning.[2] Both Verbena and Fitzpatrick testified that they chose the early hours of a Thursday morning because trash pickup typically occurred later in the day.

The residence at 2024 Anniston Street is an apartment in the style of a row house. The apartment building contains a total of six units. (Def. Mot. at 2.) The building is located within the greater Whitcomb Court apartment complex owned by the Richmond

---

[1] At the hearing, Cox testified that the defendant was the father of her children and resided at the apartment four to five days a week during the time of the trash pull and search of the home.
[2] Verbena testified that he followed a similar procedure when conducting other trash pulls. He also noted in his testimony that he had conducted trash pulls at other residences within the Whitcomb Court Apartment Complex.

2

Redevelopment and Housing Authority. Each residence within the unit is two stories in height and contains both a front and back entrance. Behind the back entrance, each unit has an individual patio area and a clothes-line held up by metal poles. One pole is positioned next to the side of the house, and the other is secured at the far end of the patio. (See Gov. Ex. 2.) While the exact measurements were not provided, each patio is approximately twenty feet in length by twenty feet in width.[3] A small patch of grass, two to three feet in width, is located at the end of the patio followed by a public sidewalk that runs parallel to the rear of the attached row homes and connects to the main sidewalk adjacent to Anniston Road. The sidewalk is located approximately seven to ten yards from the back of the residence. A large, open courtyard area is located on the other side of the sidewalk, followed by another cluster of row houses.

According to the testimony of both officers, the area in the rear of 2024 Anniston Road was not fenced at the time they conducted the trash seizure, nor is it currently fenced. Pictures introduced as evidence at the hearing corroborate their testimony. Photographs, as well as testimony revealed that some fencing is located around the perimeter of the common area, in the greater Whitcomb Court apartment complex. Specifically, Fitzpatrick identified in Government Exhibit Number 4 a fence running through the center of the common area adjacent to a sports field with bleachers. (Gov. Ex. 4.) Asia Morris, a resident of Whitcomb Court testified, however, that the fence is not gated and does not restrict access to the courtyard. According to Morris, people use

---

[3] The Government states in its response to the motion that the dimensions of each patio are "20 x 20". At the hearing, Officers testified that the sidewalk was located approximately seven to ten yards from the rear of the residence.

3

the court yard as a cut through, which she qualified by saying that most appeared to be residents of the complex. According to her, such use was so frequent, that a noticeable dirt path running parallel to the fence could be discerned in one of the photographs. (Gov. Ex. 1.)

Additionally, photographic evidence provided by the defendant revealed wrought-iron fencing originating from the sides of the apartment buildings and partially enclosing the common area between the structures. This fencing, however, lacked a gate and therefore did not appear to restrict the flow of foot traffic into the common areas behind the buildings. (Def. Ex. D1-a.)

The affidavit supporting the search warrant stated the "trash was located in a green supercan located directly behind 2024 Anniston Street." (Gov. Ex. 5.) The affidavit contained no additional information as to the location of the trashcan. At the hearing, however, both Verbena and Fitzpatrick testified that at the time they conducted the trash pull, the trashcan was located behind 2024 Anniston Street seven to ten yards from the rear of the house, in the grassy area between the patio and the sidewalk. According to both officers, the trashcan was positioned partially on the sidewalk, with the lid opening towards the house. Verbena testified that he and Fitzpatrick stood on the sidewalk to open the trashcan and remove the two black trash bags on the morning of May 26, 2011.

In his motion, as well as at the hearing, the defendant disputed the location of the trashcan at the time of the search. According to Cox, the leaseholder and resident of 2024 Anniston Road at the time of the search, the trashcan was chained to the metal clothes-line pole located closest to the house. Cox testified that in the months leading up

to the trash pull, a similar trashcan was stolen from behind her residence, prompting her to chain the new trashcan to the pole. Asia Morris and Sherisse Smith, residents of Whitcomb Court and neighbors of Cox, confirmed the placement of the trashcan, which they described as routinely chained to the pole flanking the rear of the apartment. Neither Cox, nor Morris or Smith, however, could testify as to the location of the trashcan at four o'clock on the morning of May 26, 2011. Their testimony only established that Cox generally kept the trashcan chained to the metal pole. Thus, absent any direct evidence to discount the testimony of Verbena and Fitzpatrick, the Court finds that the trashcans were located immediately adjacent to the sidewalk running behind 2024 Anniston Road at four o'clock on the morning of May 26, 2011.

At the time of the trash pull, the trashcan contained two sealed, large, black trash bags. Verbena and Fitzpatrick removed the bags from the can and transported them to the police station, where they examined their contents. Bag #1, recovered from the bottom of the trashcan, contained approximately four baggie corners and eleven clear sandwich baggies with the corners missing. In his search warrant affidavit, Officer Verbena, after describing his extensive training and experience in the investigation of drug trafficking cases, opined that these terms were consistent with the packaging of drugs for distribution.

In addition, Officer Verbena also recovered a magazine address label for Sierra Cox and an envelope addressed to the parents of Deonte Jackson. Both items displayed the address of 2024 Anniston Street.

Bag #2 similarly contained approximately 21 clear sandwich bags with the corners

5

missing and one baggie knot. At the missing corners, the bag was twisted, which according to the affidavit, was consistent with pulling off and tying an item in the missing bag corner—a practice commonly used to bag illegal narcotics. Furthermore, according to the affidavit, some of the baggie corners recovered contained residue and one contained green plant material—consistent with the use of a schedule I/II narcotic and marijuana, respectively.

Based on this evidence and his experience in identifying narcotics and packaging, Verbena concluded in the affidavit that narcotics possession and distribution was taking place at 2024 Anniston Street. Pursuant to Verbena's affidavit, a Richmond Circuit Court Judge signed the search warrant. It was executed several days later.

During the search, officers discovered two firearms, approximately 22 grams of cocaine base, approximately 25 grams of cocaine hydrochloride, and a large amount of U.S. currency. Defendant presently challenges the constitutionality of the trashcan pull, as well as whether the search warrant was supported by probable cause.

## II.

The central issue at this juncture is whether the police may constitutionally search a trashcan and the enclosed trash bags behind the defendant's residence within an apartment complex without a search warrant. The Fourth Amendment provides in relevant part that the rights of "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625 (1988), the Supreme Court found that the Fourth Amendment does not prohibit the warrantless

search and seizure of garbage left outside, on a street curb, and thus beyond the curtilage of defendant's home. The garbage in *Greenwood* had been left in sealed, opaque bags on the curb for collection at a scheduled time. According to the Court in *Greenwood*, a search under such circumstances would violate the Fourth Amendment only if the defendants "manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." 486 U.S. at 39, 108 S. Ct. at 1628. Thus, a legitimate expectation of privacy exists when (1) the claimant exhibits an actual (subjective) expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable.

Applying this two part analysis, the Supreme Court in *Greenwood* stated that it may be "that respondents did not expect that the contents of their garbage bags would become known to the police or other members of the public. An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation as objectively reasonable." *Id.*

The Court then concluded that any subjective expectation of privacy held by the defendant would be unreasonable because of the extent the garbage was exposed to the public. In drawing this conclusion, the Court noted that the accessibility of garbage bags left on the side of the street to animals, children, scavengers, and snoops is "common knowledge." *Id.* The Court also observed that the defendants placed their "refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through the trash" or allowed a third party to do so. *Id.* "Accordingly, having deposited their garbage in an area particularly well suited for

7

public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondent could have had no reasonable expectation of privacy in the inculpatory items that they discarded." 486 U.S. at 40–41, 108 S. Ct. at 1628–29.

In contesting the constitutionality of the search, the defendant advanced both factual as well as legal challenges. In his motion, and at the hearing before the Court, the defendant initially disputed the location of the trash at the time Officers Verbena and Fitzpatrick removed the trash bags. According to the defendant's motion, the trashcan was situated directly behind his residence, chained to a metal pole, and therefore, located within what he considered to be the curtilage of the house. However, as mentioned above, the testimony of both Officers Verbena and Fitzpatrick unequivocally indicated that the trashcan was positioned directly next to the sidewalk, with a portion of the can actually protruding onto the sidewalk. Furthermore, according to their testimony, the trashcan was not chained or otherwise secured at the time of the trash seizure. In response, the defendant presented testimony from Cox as well as her neighbors in the Whitcomb Court complex to support the contention that the trashcan was chained to the metal pole on the morning of the trash pull. Each described the can as routinely chained to the pole, but could not verify that it was secured each day. Moreover, not a single witness could attest to the location of the trashcan at four o'clock on the morning of the trash pull.

Based on the uncontroverted testimony of the officers, the Court has concluded that the trashcan was in fact located immediately adjacent to the side walk. Even

assuming that most pedestrian traffic using the sidewalk was complex residents, it is still a common easement.

The Court therefore finds that the trashcan was situated outside of the curtilage of the residence at 2024 Anniston Street at 4:00 a.m. on May 26, 2011. In *Oliver v. United States*, 466 U.S. 170, 178, 104 S. Ct. 1735, 1741 (1984), the Supreme Court held that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home [the curtilage]." The critical component of the curtilage inquiry is "whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *United States v. Dunn*, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139 (1987) (citation and internal quotation marks omitted). Whether an area falls within a home's curtilage depends on a four factor assessment, including the proximity of the area to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. 480 U.S. at 301, 107 S. Ct. at 1139–40.

Based on Verbena's testimony, as well as exhibits provided by the Government, the trashcan was located seven to ten yards from the back door of the house, past a concrete patio which extends approximately twenty feet out from the rear entrance. (Gov. Ex. 2.) No fencing or other enclosure contained the trashcan. As indicated by the officers, the trashcan was located immediately adjacent to the sidewalk, with a portion of the trashcan protruding onto the sidewalk. The remaining portion of the trashcan was therefore sitting on a two or three foot wide strip of grass between the patio and the

9

residence. The collective testimony appears to support the conclusion that the area beyond the concrete patio is part of the common area within the Whitcomb Court apartment complex, rather than part of the defendant's leased property. Furthermore the fact that the trashcan was positioned directly next to a publicly accessible sidewalk evidences that defendant took no steps to protect the area from observation by passersby. In sum, each of the four factors weighs in favor of a finding that the trashcan was located outside of the curtilage of the residence.[4]

Satisfied that the trashcan was located outside the curtilage of the residence at the time of the trash pull, the Court next turns to the defendant's subjective expectation of privacy. To satisfy this component, a defendant must have demonstrated, through his own conduct, an intention to keep his or her activities and items private, and must not have knowingly exposed them to the open view of the public. *See Katz v. United States*, 389 U.S. 347, 351–52, 88 S. Ct. 507, 511 (1967). Applied here, this test compels the conclusion that defendant did not have a subjective expectation of privacy in the trash *at the time* it was searched by the officers. Although an alternative conclusion might be appropriate under a factual scenario involving a trashcan secured directly behind the defendant's residence, that is not the case presented here. At the time of the trash pull, the trashcan was located next to a sidewalk, and readily accessible by neighbors and visitors passing through the common area of the apartment complex.

---

[4] Even assuming the trashcan was located within the curtilage of the home would not necessarily end the inquiry. As noted by the Seventh Circuit in several cases involving trash pulls, Fourth Amendment issues do not depend solely on the curtilage. *See U.S. v. Shanks*, 97 F.3d 977 (7th Cir. 1996); *U.S. v. Hedrick*, 922 F.2d 396 (7th Cir. 1991).

However, even assuming that Cox's practice of sometimes chaining the trashcan to the metal pole provided evidence of a subjective expectation of privacy, it must be one that "society accepts as objectively reasonable." *Greenwood*, 486 U.S. at 39, 108 S. Ct. at 1628. In contending that he maintained a reasonable expectation of privacy in the trashcan even if located outside of the curtilage of the residence, the defendant attempts to distinguish his case factually from *Greenwoood*. Specifically, he argues that in the immediate case, the trashcan at issue had not been placed in its final location for pickup and that police officers rather than the trash collector confiscated the bags. In *Greenwood*, the police officer asked the neighborhood's regular trash collector to pick up the plastic garbage bags that Greenwood had left on the curb in front of his house and to turn the bags over to her for inspection. 486 U.S. at 38, 108 S. Ct. at 1628. While it is true that many subsequent cases mirror the investigatory procedure employed by the officer in *Greenwood*, a number involve the direct acquisition of trash by the officers.

For example, in *U.S. v. Shanks*, 97 F.3d. 977, 978 (7th Cir. 1996), police directly confiscated trashcans located next to the garage twenty feet from the defendant's residence. In upholding the validity of the search, the court stated that the defendant could not "claim an expectation of privacy . . . merely because it was the police, rather than the regular garbage service, who rummaged through his garbage." *Id.* at 980. Citing *Greenwood*, the court explained that "[o]nce he put his contraband-containing bags in the garbage containers located adjacent to a public thouroughfare, he exposed them to the public-at-large including the police." *Id.* Similarly, in the instant case, by placing the trashcan adjacent to the sidewalk—readily accessible to neighbors and other visitors in

11

the apartment complex—the defendant exposed the trashcan to the public-at-large, relinquishing any objectively reasonable expectation of privacy.[5]

As a final matter, the Court notes that the fact that neither the defendant nor Cox had pulled the trashcan around to the curb for third-party disposal is not dispositive in determining the constitutionality of the search. The defendant attempts to distinguish this case from *Greenwood* by the fact that the trashcan needed to be carted approximately 55 yards, around the building and to the curb, in order for the trash collectors to remove the garbage. In *Greenwood*, the Supreme Court certainly noted the fact that the defendant's garbage had been placed "at the curb for the express purpose of conveying it to a third party." 486 U.S. at 40, 108 S. Ct. at 1628. However, the public accessibility rather than the placement of the garbage cans for ultimate collection controlled the Court's ultimate disposition. Indeed, the Court's analysis focused on whether the defendants sufficiently exposed their garbage to the public. *Id.* As clarified by the Seventh Circuit in several cases following *Greenwood*, the "relevant inquiry is whether the garbage cans were so readily accessible to the public that they exposed the contents to the public for Fourth Amendment purposes." *Shanks*, 97 F.3d at 980. This is in part because a *per se* rule denying protection to all garbage placed out for collection "would allow police officers to inspect cans placed next to the garage or the house itself without any showing of probable

---

[5] At the hearing, the defendant presented testimony regarding accessibility of the sidewalk and common area to the public at large. Specifically, the defendant's investigator testified that numerous no-trespassing signs were located around the buildings in the complex. Residents of the complex also testified that the sidewalk area was not generally accessed by strangers. However, this was not a gated community. Residents, visitors, and other non-residents could access the common area and the sidewalk at will. Furthermore the testimony of Asia Morris indicated that a dirt path running perpendicular to the sidewalk, next to the baseball field was regularly used as a through-fare for residents, as well as occasional strangers.

cause or a warrant," and without any regard to public accessibility. *Hedrick*, 922 F.2d at 400.

Moreover, although the trash had not been placed by the curb in the immediate case, it had been discarded for the express purpose of conveying it to a third party. Cox admitted at the hearing that she always used the trashcan to discard garbage, rather than for any storage purpose. Furthermore, as noted in investigator Linda McGrew's testimony, residents of Whitcomb Court were required to keep their trash in their private area or at the end of their yards until Thursday morning. Thus, Cox and the defendant had no choice but to keep the trash in the rear of the residence until collection day. Consequently, whether she placed the can on the curb or behind the residence next to the sidewalk, the trash had been relinquished for the sole purpose of conveying it to a third party. For these reasons, the Court finds that the trash seizure conducted by Officers Verbena and Fitzpatrick did not violate the defendant's Fourth Amendment rights. Consequently, the items found in the trash bags were properly included in the search warrant affidavit.

### III.

In addition to contesting the constitutionality of the search, the defendant also argues that the underlying affidavit for the search warrant lacked probable cause. When officers conduct a search and seizure pursuant to a warrant, the defendant has the burden of proving by a preponderance of the evidence the invalidity of the search and that suppression is warranted. *United States v. Matlock*, 415 U.S. 164, 177 n. 14, 94 S. Ct. 988 (1974). The Fourth Amendment requires that search warrants be supported by

13

probable cause, whereby courts must apply a "totality of the circumstances" analysis to determine if such probable cause exists to support a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, (1983).

In reviewing a magistrate's probable cause determination, "great deference" must be accorded to the magistrate's assessment of the facts presented to him or her. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir.1990) (citing *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584 (1969)). The task of the reviewing court is not to "conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record" to support the magistrate's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S. Ct. 2085 (1984) (per curiam). In reviewing a probable cause determination, a court may consider only "the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

At the hearing before this Court defendant conceded that the items seized from his trash receptacles constituted probable cause to search his residence.[6] The remaining challenge thus related to the sufficiency of the information in the affidavit regarding the location of the trashcan—specifically, the fact that the affidavit only stated that the

---

[6] In his motion, defendant alleges that "[w]ithout a specific representation in the affidavit that controlled substances were found in the trash can or in the baggies found in the trash can , or some other evidence tying the baggie corners or cut out baggies to illegal substances," the Court should not find that probable cause supports the affidavit. However, the affidavit specifically refers to baggie corners with residue and a baggie corner with green plant material, consistent with the distribution of a schedule I/II narcotic and marijuana, respectively. (See Def. Mot. Suppress Ex. 1.)

trashcan at issue was "located directly behind 2024 Anniston Street."[7] Because the Court determined, however, that the seizure of the defendant's trash did not violate his Fourth Amendment rights, the Court also holds that the affidavit was supported by probable cause.[8]

## IV.

The Defendant's Motion to Suppress Evidence is therefore denied. An appropriate order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Feb 17, 2012
Richmond, VA

---

[7] At the hearing the Court held as a preliminary matter that the defendant had made the "substantial preliminary showing" that is required for him to be entitled to an evidentiary hearing challenging the integrity of an affidavit submitted to support the issuance of a search warrant for his residence under the Fourth Circuit's analysis in *United States v. Tate*, 524 F.3d 449, 453–54 (4th Cir. 2008). (*See also Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978)). The Government offered no objection.

[8] Even if the affidavit contained insufficient evidence of probable cause, this Court would conclude that the good faith exception articulated in *U.S. v. Leon*, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422 (1984), would apply. There was no indication that the affiant was dishonest or reckless in preparing the affidavit or "could not have harbored objectively reasonable belief in existence of probable cause." *U.S. v. Lalow*, 990 F.2d. 1578, 1583 (4th Cir. 1993).